endo, and also upon the further question as to whether they were libelous per se. The court denied these requests, and ruled that the only question for the jury was the amount of damages. To these rulings the defendant's counsel duly 'excepted. The court thereupon instructed the jury upon the law relating to the measure of damages, and stated, at the outset, that the only question for their determination was the amount of damages they would award to the plaintiff. The defendant's counsel also excepted to that part of the charge which confined the investigation of the jury to the question of damages. The court in no manner eliminated from the consideration of the jury the claim of the plaintiff that the alleged libelous article in effect charged the plaintiff with being the notorious convicted Alderman Parks, or evidence received on that subject. The court thus ruled, in effect, as matter of law, that this article would naturally be understood by readers of ordinary and average intelligence as charged in the innuendo. The magnitude of the verdict indicates that the jury understood that the defendant was liable for damages upon the theory that the article charged the plaintiff with being the convicted alderman. The prior article being before them, and the graver meaning of the words not having been excluded from their consideration by the court, the jury could not well have concluded otherwise. We regard this ruling as erroneous. But it is not to be understood that we deem the question as to whether the article was susceptible of the meaning ascribed in the innuendo one for the jury. Were it not for the admission in the answer that the mistake arose through a confusion of names, it would not be apparent that the libelous article was intended to charge the plaintiff with the crimes and misdeeds of which Alderman Parks had been convicted, or with which he had been charged, many years before. If the readers of an article would not glean from it a libelous meaning, the intent of the publisher would not make it libelous. Upon the facts here disclosed, this article will not bear the meaning ascribed to it in the innuendo.

The judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.

---

(68 App. Div. 82.)

### WHITESELL v. NEW JERSEY & H. R. RY. & FERRY CO.

(Supreme Court, Appellate Division, First Department. January 17, 1902.)

1. ATTORNEY AND CLIENT—EMPLOYMENT—CONSTRUCTION OF CONTRACT.
    A contract between a husband and an attorney, which states that the former, in consideration of legal service to be rendered by the latter in and about the husband's claims for damages against a certain railroad company for injuries sustained by the husband and his wife, may bring action for the husband, does not authorize the attorney to bring action on behalf of the wife.

2. SAME—EVIDENCE—SUFFICIENCY.
    A wife, who had been injured by a railroad accident, was visited by the representative of an attorney desiring to obtain her case, and was referred to her husband, and entered into a contract with the latter authorizing the attorney to commence suit against the company on be-

half of the husband. The attorney's representative swore that the wife and husband authorized the attorney to commence suit for the wife, but this was denied by both husband and wife. *Held* insufficient to show an employment of the attorney to bring suit for the wife.

3. SAME—COMPENSATION.

A mere authority to an attorney to institute a suit, being revocable by the client, only entitles the attorney to compensation for services performed before its revocation.

4. SAME.

An attorney employed by a husband to commence action against a railroad company in behalf of the husband for injuries to the wife for half of the recovery, but having no authority to act for the wife, instituted action in the name of the latter for personal injuries, which action was afterwards discontinued by her. There was evidence that the wife had settled with the company, but this was denied by the wife and by the company, and there was evidence that there was a suit pending in another state therefor. *Held*, that an order requiring the wife to pay the attorney one-half of the proceeds of the settlement, and authorizing him to proceed with the cause in default of such payment, was erroneous.

5. SAME—COSTS.

An attorney who commences an action without authority from the plaintiffs is not entitled to compensation or costs.

Laughlin, J., dissenting.

Appeal from special term, New York county.

Action by Minorria E. Whitesell against the New Jersey & Hudson River Railway & Ferry Company. From an order vacating an order of discontinuance and allowing plaintiff's attorney to continue the action, the defendant appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Julien T. Davies, for appellant.
Herman Gottlieb, for respondent.

INGRAHAM, J. On the 12th day of May, 1901, at half past 4 in the afternoon, the plaintiff, while a passenger on a car owned and operated by the defendant, sustained injuries, and on the following day a representative of the plaintiff's attorney called at her house, and "requested her to retain Herman Gottlieb as her attorney if she intended to institute suit against the defendant herein." He did not succeed in obtaining from the plaintiff her consent to bring the action, but she referred him to her husband, who appears to have been with her in the car at the time she was injured. The attorney's representative at once called upon the plaintiff's husband, and, after some conversation, in which he informed Mr. Whitesell that he had interviewed his wife, and that she had informed him that said Herman Gottlieb had been retained by two other persons who had been injured in the same accident, and requested him to retain the said Herman Gottlieb as attorney in behalf of himself and wife,—which statement, according to his own affidavit, was false,—induced him to sign this agreement:

"In consideration of legal services rendered and to be rendered to me by Herman Gottlieb, attorney and counselor at law of New York City, in and about my claim for damages against New Jersey and Hudson R. R. Ferry Company may be liable for injuries sustained by myself and wife in the accident which occurred on the 12th day of May, 1901, any action

which Herman Gottlieb may bring or institute, I, A. S. Whitesell, do hereby agree to give Herman Gottlieb the exclusive right and power to prosecute my said claim for damages, and the said Herman Gottlieb hereby agrees to give me one-half of the net proceeds recovered, and I hereby agree with the said Herman Gottlieb that he shall retain one-half of the net proceeds recovered, together with the costs and counsel fees of the action as allowed by the defendant and the court. No settlement of this case can be made in or out of court without the consent of both parties hereto. In witness whereof I have hereunto set my hand this 13th day of May, 1901.

"A. S. Whitesell."

The consideration for the agreement is the legal service "rendered and to be rendered" by the attorney to the plaintiff's husband in and about the husband's claim for damages against the defendant for injuries sustained by the husband and his wife in the accident which occurred on the 12th of May, and the husband agreed that in any action which the attorney might bring or·institute the husband would give to the attorney the exclusive right and power to prosecute his (the husband's) claim for damages, and the attorney agreed to give the husband one-half of the net proceeds recovered. In this agreement there is no authority to act on behalf of the plaintiff, or to bring any action for her. In explaining this agreement the plaintiff's husband swears that he and his wife were passengers upon this car; that he was "shaken up, and at the time thought he might have received injuries, but subsequently felt no bad effects"; that on the following day Grossman, the attorney's representative, called on the deponent, and asked him to allow Mr. Gottlieb to bring an action for him, and that deponent consented to this, and signed a paper for that purpose; and that two or three days afterwards he wrote a letter to Mr. Gottlieb, in which he stated that he had suffered no substantial injury, and that he did not wish an action brought in his name. or to take further steps in the matter. Grossman swears that he had some conversation with the plaintiff's husband about bringing an action for the plaintiff, but both the plaintiff and her husband positively swear that they never authorized such an action to be brought. Mr. Gottlieb brought an action for the plaintiff by the service of a summons upon the defendant on the 15th day of May,—two days after this interview of Grossman's with the plaintiff and her husband,—but no complaint was then served. He subsequently, in June, served an unverified complaint upon the defendant's attorney, but that was after the action had been discontinued, and the complaint was returned upon that ground; and that is all that the attorney seems to have done in the matter. It is quite apparent that the attorney was never authorized to commence an action for the plaintiff. He sent to the plaintiff to obtain authority, but she refused to give it, and referred his representative to her husband. The representative went to the husband, making the representation above referred to as to what his wife told him, and got authority from him to commence an action in his behalf, but obtained no authority to commence an action for the plaintiff. The representative was careful to get written authority from the husband, and, if either the husband or the plaintiff had authorized the attorney to commence an action on behalf of the plaintiff, undoubt-

edly some written authority such as was obtained from the husband would have been obtained from the wife. Nothing of that kind is claimed. The plaintiff expressly repudiated the attorney's authority to bring this action, and swears that she gave none; and there is nothing but the affidavit of Grossman that states that any action by the wife was ever directly or indirectly authorized or contemplated; and as this is specifically denied by both the husband and the wife, and the attorney is unable to produce the slightest written authority, I think the clear preponderance of evidence is against the claim of the attorney. Even Grossman does not pretend that he ever had an agreement with the wife by which the attorney was to receive one-half or any other portion of the damages that she should recover. According to Grossman's story, there was a simple authority to commence the suit, which was revoked a few days after by the plaintiff's agreeing to discontinue the suit that Gottlieb had commenced in her name. If this were true, he would be entitled to no more than the legal value of his services, which consisted in serving a summons upon the defendant.

The order appealed from first directs the defendant to pay to Herman Gottlieb, the attorney for the plaintiff, one-half of the amount of the settlement effected between the plaintiff and the defendant, besides the costs and disbursements of the action up to the time of the aforesaid settlement, within 10 days after service of a copy of the order and notice of entry thereof; and upon a failure on the part of the defendant to pay said sum of money, Herman Gottlieb, the attorney for the plaintiff, was permitted to continue and prosecute this action to judgment, and to enforce his lien to the extent of one-half of any recovery obtained therein; and, in the event that it should become necessary to prosecute the action to judgment, the order discontinuing the action upon the plaintiff's consent was vacated, and Gottlieb is given $10 costs of the motion to abide the event. Just why one-half of the amount of the settlement was given to Gottlieb, is not apparent. In his agreement with the plaintiff's husband he had agreed that the husband should be allowed to receive one-half of what he was to recover; but, as before stated, he had no such agreement with the wife, and, so far as appears, up to the time that his authority was repudiated, he did nothing but serve the summons. Both the plaintiff and the defendant expressly deny that the claim has been settled, and allege that the plaintiff has commenced an action in the state of New Jersey, where the accident happened, to recover for the damages that she sustained. So that, if this order is sustained, the defendant has two actions on its hands,—one in New Jersey, for the benefit of the plaintiff, who sustained the injury; and the other in New York, for the benefit of this attorney, who has sustained no injury, and rendered no service, except sending his representative to induce the plaintiff to commence an action, and serving a summons on the defendant. I think the order appealed from, upon the facts, was entirely unjustified. The plaintiff's attorney performed no service, obtained no agreement as to compensation, and was entitled to $15 costs of the action if he had been authorized to bring the action; but,

not having been authorized to bring it, he was entitled to no compensation.

The order appealed from is reversed, with $10 costs and disbursements, and the motion to vacate the order of discontinuance denied, with $10 costs, to be paid by the respondent's attorney personally. All concur, except LAUGHLIN, J., who dissents.

---

(67 App. Div. 535.)

## SIMONOWITZ v. SCHWARTZ.

(Supreme Court, Appellate Division, First Department. January 10, 1902.)

1. CHECKS—INDORSEMENT BY MAKER—LOSS—NEGLIGENCE.

Defendant gave plaintiff a check, and, the same being lost or stolen, plaintiff informed defendant thereof, as he testified, the evening he received the check, when defendant gave him a letter to the bank, stopping payment, which was presented next morning. The letter was dated June 7th, and a check purporting to have been indorsed by plaintiff and defendant, dated June 4th, was produced by defendant, who testified that he was not informed of the loss until the evening of the 6th. Plaintiff denied ever having indorsed the check or having requested defendant to do so. *Held*, that if plaintiff requested defendant to indorse the check, and defendant did so, and gave it to plaintiff, the check was payable to the one presenting it, and plaintiff would not be entitled to recover if it had been paid before defendant was notified of the loss; but plaintiff having denied indorsing the check, or that defendant did so at his request, the question as to such indorsement was for the jury, and defendant was not entitled to the direction of a verdict.

2. SAME.

If defendant did not indorse the check at plaintiff's request, and then deliver it to plaintiff, its payment by the bank was unauthorized by plaintiff, and, as that payment was procured by defendant's indorsement, defendant would be liable.

3. SAME.

If defendant indorsed the check at plaintiff's request, and plaintiff then took it away, and it was paid by the bank before notice that it was lost, defendant would not be liable.

Appeal from trial term, New York county.